UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETE A.,<br><br>         Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>         Defendant. | Case No.: 20cv1566-LL<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 21, 22]** |

  Plaintiff Pete A. brings this action for judicial review of the Social Security Administration Commissioner's denial of his claim for disability insurance benefits and supplemental security income. ECF No. 1. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 21 ("Pl. Mot.")], Defendant's Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion [ECF No. 22 ("Def. Mot.")], and Plaintiff's Reply [ECF No. 23 ("Reply")]. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

---

[1] Ms. Kijakazi is substituted for Andrew Saul as the Defendant in this case.

# PROCEDURAL BACKGROUND

On May 18, 2017 and June 26, 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income, respectively, pursuant to Titles II and XVI of the Social Security Act. Administrative Record ("AR") at 15. In both applications, Plaintiff alleged disability beginning July 3, 2015. Id. The Social Security Administration ("the SSA" or "the Commissioner") denied the applications. Id. at 133-38, 141-46.

On March 29, 2019, a hearing was held before an Administrative Law Judge ("ALJ"). Id. at 15. Plaintiff was represented by counsel, and a vocational expert provided testimony. Id. On June 26, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled. Id. at 15-28. Plaintiff requested review of the ALJ's decision by the SSA's Appeals Council. Id. at 197. In a letter dated June 9, 2020, the Appeals Council found no basis for changing the ALJ's ruling. Id. at 1-3. The ALJ's decision then became the Commissioner's final decision.

On August 12, 2020, Plaintiff filed the instant action for judicial review by the federal district court. ECF No. 1. On August 18, 2021, Plaintiff filed a Motion for Summary Judgment. ECF No. 21. On September 7, 2021, Defendant filed a Cross Motion for Summary Judgment. ECF No. 22. On September 22, 2021, Plaintiff filed a reply. ECF No. 23.

# SUMMARY OF THE ALJ'S FINDINGS

In his written decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 3, 2015, the alleged onset date. AR 18. At step two, the ALJ found Plaintiff had the following severe impairments: "major depressive disorder, recurrent; anxiety disorder; bipolar mood disorder; panic disorder; degenerative disc disease of the lumbar spine; bilateral knee strain; lumbar radiculopathy; asthma; type II diabetes; and allergic rhinitis." Id. at 18. The ALJ found these medically determinable impairments significantly limited Plaintiff's ability to perform basic work activities. Id.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. Id. at 19-21. In his residual functional capacity (RFC) assessment, the ALJ found Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(c). Id. Specifically, the ALJ found that:

> [Plaintiff] could frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, and frequently balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold, fumes, odors, gases, and other pulmonary irritants. The claimant must avoid concentrated exposure to hazards such as operational control of moving machinery and unprotected heights. In addition, the individual is limited to understanding, remembering, and carrying out simple, routine tasks, with only occasional interaction with the general public, and only occasional work-related, non-personal, non-social interaction with co-workers and supervisors.

Id. at 21. A vocational expert classified Plaintiff's past work as that of an industry systems operator. Id. at 15, 26. At step four, the ALJ found Plaintiff was not capable of performing any past relevant work. Id. at 26. At step five, relying on the vocational expert's testimony, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including kitchen helper, hand packager, and hospital cleaner. Id. at 26.

## STANDARD OF REVIEW

The Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). A denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted). "Substantial evidence is more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). Substantial evidence is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted). "In determining whether the [ALJ's] findings are

supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). "'Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.'" Trevizo, 871 F.3d at 674-75 (quoting Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007)). "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and ambiguities." Lewis, 236 F.3d at 509 (citing Reddick, 157 F.3d at 722). A court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted). A court may enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the SSA for further proceedings. Id.

## DISCUSSION

Plaintiff argues the ALJ erred in finding that Plaintiff did not need to use a cane and by failing to incorporate Plaintiff's use of a cane into his RFC. Pl. Mot. at 13. The SSA does not dispute the ALJ "discounted Plaintiff's allegations that he used a cane." Def. Mot. at 5. Rather, the SSA argues the ALJ was not required to incorporate Plaintiff's use of a cane into his RFC because there was insufficient documentation in the record showing that Plaintiff needed the cane and the circumstances in which he needed the cane. Id. at 5-7.

**A.    Applicable Law**

An ALJ's RFC determination "must set out all the limitations and restrictions of the particular claimant." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). An ALJ will assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The claimant "is ultimately responsible for providing the evidence to be used in making the RFC finding," but an ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006)

(citations omitted). The court must defer to the ALJ's RFC determination "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). With respect to canes, Social Security Ruling 96-9p provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p; see also Luis G. v. Saul, No. ED CV 19-00317-DFM, 2020 WL 1433589, at *3 (C.D. Cal. Mar. 24, 2020) ("[T]he use of an assistive device is probative of a claimant's functional limitations only where it is medically required."); Dean N. v. Saul, Case No. CV 18-09840-DFM, 2020 WL 430962, at *1 (C.D. Cal. Jan. 28, 2020) ("The use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required.") (citing SSR 96-9p).

### B. The ALJ's Decision

The ALJ found that Plaintiff was severely impaired based on, inter alia, his spine disorders and bilateral knee strain.[2] AR 18. During the hearing, the ALJ noted "so you came in today using a cane" and asked "do you have that – use the cane all the time?" Id. at 46. Plaintiff responded, "yes." Id. In his written decision, the ALJ noted that "[i]n [Plaintiff's] function report, the claimant endorsed having difficulty in every physical and mental area of functioning" and "[h]e alleged walking with a cane." Id. at 22. The ALJ also noted that "[d]uring the hearing, the claimant reiterated, but did not significantly expand upon, these allegations." Id.

---

[2] As noted above, in addition to spine and knee issues, the ALJ also found impairments based on: (1) major depressive disorder, recurrent; (2) anxiety disorder; (3) bipolar mood disorder; (4) panic disorder; (5) lumbar radiculopathy; (6) asthma; (7) type II diabetes; and (7) allergic rhinitis. AR 18.

The ALJ also found, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence[.]" Id. With respect to Plaintiff's spine disorders and bilateral knee strain, the ALJ found that "examinations around the alleged onset date did not show any problems with his back and knees." Id. The ALJ also cited medical records, including x-rays, from July 2014 to July 2017 showing "mild retrolisthesis," "moderate degenerative changes," "moderate facet degenerative changes of the lower lumbar spine," and "mild degenerative changes but no joint effusion." Id. (citing AR 314-400). The ALJ also relied on an orthopedic consultive exam in October 2017 which noted:

> The gait had normal cadence and velocity without signs of limp or antalgia. The claimant sits in a chair comfortably without tilt. The claimant is able to rise from a sitting and supine position without difficulty. The claimant did present with a single point cane, but was able to ambulate without the use of it.

Id. (citing AR 497). Finally, with respect to all of Plaintiff's impairments, and not just the spine and knee issues, the ALJ also relied on Plaintiff's activities of daily living. Id. at 24. The ALJ stated:

> [T]he claimant's activities of daily living stated in his function report and testimony were not consistent with his allegations of debilitating impairment. Despite the claimant's allegations of disability, the claimant's function report showed he was able to live in a townhouse alone and had no difficulty tending to his personal care including dressing and bathing independently. He was able to prepare meals, check his emails, and pay bills despite his allegations of trouble focusing and using his hands. He reported being able to take care of his aging parents by traveling to visit them three times per month. Though the claimant alleged having problems with mobility and focus, he was able to clean his home, do laundry, and take his recycling to the recycling center on his own volition and without encouragement. He was able to leave his home on a daily basis to check the mail, retrieve the newspaper, and go for walks. He was able to drive a motor vehicle, leave home independently, and grocery shop. Though he reported having trouble getting along with others, he was able to attend homeowners' association meetings and meetup groups and restaurants five times per year. Medical evidence showed the claimant was able to serve on the board of his homeowners' association.

Id. at 24. The ALJ thus concluded Plaintiff "did not require a cane for ambulation," id., and "was able to walk and move about well enough to perform a limited range of medium work . . . . even though he presented to examination with a cane at times," id. at 26. Accordingly, the ALJ's RFC assessment did not include the use of a cane. Id. at 21

### C. The Parties' Arguments

In his Motion, Plaintiff argues the ALJ failed to sufficiently consider: (1) Plaintiff's subjective complaints supporting his use of a cane;[3] (2) objective medical evidence supporting his use of a cane;[4] (3) Plaintiff's use of a disability placard; (4) Plaintiff's testimony concerning his activities of daily living; and (5) Plaintiff's testimony concerning

---

[3] Plaintiff argues the ALJ failed to properly consider Plaintiff's subjective complaints, as noted in various records, that: (1) he suffers from significant bilateral knee, back, and neck pain while walking, standing, or rising from a seated position; (2) sometimes his pain is so severe that he can barely walk; (3) driving exacerbates Plaintiff's pain, so after driving Plaintiff is unable to do perform any activities; (4) even when not driving, Plaintiff stops an activity he is performing after thirty minutes due to pain; (5) lifting and bending increased his back and knee pain; (6) he could walk three blocks and stand for one hour at a time; (7) due to his symptoms of pain, Plaintiff has used a cane for stability since 2008; and (8) Plaintiff suffered from a prior injury of shattered kneecaps which causes chronic knee pain and post injury shifting of his kneecaps. Pl. Mot. at 15.

[4] Plaintiff argues the ALJ overlooked objective medical evidence including: (1) "evidence of Plaintiff's midthoracic levoscoliosis measuring approximately 13 degrees and bilateral knee joint space narrowing of patellofemoral compartments;" (2) a 2013 "musculoskeletal exam demonstrating bilateral abnormal patellar mobility with crepitus at lateral movement and decreased lumbar range of motion;" (3) "Plaintiff's physical therapy in 2019 for knee pain, where Plaintiff's physical therapist observed his gait was modified, but independent with a cane, and he exhibited stiffness with movement and transitioning from sitting to standing;" (4) "functional testing reveal[ing] . . . . right knee pain at a thirty-degree squat, positive fifty-five-degree straight leg test bilaterally, decreased right quad strength, decreased patellar mobility of the right knee, difficulty extending right knee, and tenderness above the patella; (5) his physical therapy goals were to bend, get down, and sit to stand from a chair with no pain bilaterally in twelve weeks; and (6) "multiple mental status examinations where plaintiff is observed by his medical providers to walk with a slow, normal posture and use a cane." Pl. Mot. at 16.

his use of a cane. Pl. Mot. at 13-25. Plaintiff argues the ALJ erred in finding that Plaintiff did not require the use of a cane, and therefore, the ALJ erred in finding that Plaintiff had the RFC to perform medium work. Id. at 15, 25. Plaintiff argues the ALJ should have restricted Plaintiff's RFC to sedentary or light work, both of which require a finding that Plaintiff is disabled.[5] Reply at 8.

In response, the SSA argues that under SSR 96-9p, the ALJ had "no obligation to include any cane-related provision in Plaintiff's RFC" because "although [Plaintiff] presented evidence that he used a cane, he did not provide evidence establishing that the cane was medically required." Def. Mot. at 5. In support of this argument, the SSA states: (1) "the record was devoid of any prescription for a cane or even any recommendation from a treating medical provider that Plaintiff use a cane, let alone that Plaintiff use the cane for specific purposes, durations, environments, or other circumstances;" (2) "[t]he fact that he elected to use a cane . . . . does not establish that it was medically necessary;" (3) "medical records indicating knee-related findings, specifically, diagnostic findings, stiffness in transitioning from sitting to standing, and a slow gait (but with normal posture) . . . . speak to diagnosis and functional limitations, [but] are silent as to any finding that a cane was medically required;" and (4) "the ALJ accounted for this evidence by, among other things, finding that Plaintiff had severe knee and spine-related impairments (degenerative disc disease of the lumbar spine and knee strain) and accounting for any decreased functioning by reducing the exertional and postural capabilities in Plaintiff's RFC (among other significantly reduced capabilities)." Id. at 5-7.

In reply, Plaintiff concedes "there must be documented evidence describing any of the claimant's limitations in functioning and the circumstances for which the device is

---

[5] Although Plaintiff's motion hinges on the ALJ's finding with respect to Plaintiff's use of a cane, Plaintiff cites SSR 96-9p only in passing to support of the proposition that "[t]he use of a cane precludes the ability to perform most unskilled jobs above the sedentary level." Pl. Mot. at 23. The first time Plaintiff acknowledges the requirements of SSR 96-9p is in his Reply. Plaintiff does not argue that the ALJ erred irrespective of the cane issue.

needed." Reply at 5. Plaintiff also does not dispute that SSR 96-9p applies, or that it was his burden under SSR 96-9p to prove the medical necessity of the cane. Id. at 5. Instead, Plaintiff argues he "has the required documented evidence as his physical therapist assessed he used a cane for balance and poor vision, due to multiple chronic injuries and pain to his back, neck, and knees." Id. (citing AR 2243). Plaintiff further argues that his "symptoms were supported by findings of globally stiff lower extremities, clicking with flexion and extension of the right knee, positive straight leg testing, and right glute weakness." Id. (citing AR 2241-43).

### D.     Analysis

The records cited by Plaintiff do not support that he has medical documentation showing the necessity of his cane under SSR 96-9p. The records show that in January 2019 Plaintiff received physical therapy, and that the physical therapist noted "numerous complaints of chronic pain back, neck, knees" and "uses a cane for balance and poor vision." AR 2243. The physical therapist also noted "observation global stiffness with movement on table today and functional sit to stand." Id. at 2241. Accordingly, even if these notations by a physical therapist constitute "medical records establishing the need" for the cane for balance and poor vision, they do not "describ[e] the circumstances for which it is needed" because they do not describe whether the cane is needed "all the time, periodically, or only in certain situations," the "distance and terrain" for which the cane is needed, "and any other relevant information." See SSR 96-9p.

Other district courts have declined to find ALJ error or a lack of substantial evidence on the same or similar grounds despite the claimant's statements concerning the need for a cane, notations that the claimant uses a cane, and some medical evidence supporting the use of a cane. See, e.g., Amber C. v. Saul, Case No. 2:19-cv-03208-MAA, 2020 WL 2061771, at *3 (C.D. Cal. Apr. 29, 2020) (despite physical therapy notes and a statement from her treating physician that a walker should be used with routine frequency, plaintiff did not meet her burden of showing the walker was medically required because the evidence cited by plaintiff did not describe the circumstances when the walker was

needed); Luis G., 2020 WL 1433589, at *4 ("The fact that a cane was sometimes documented in the record was not enough to establish its medical necessity."); Dean N., 2020 WL 430962, at *2 ("Without a physician describing the circumstances for which the cane is needed, the ALJ cannot find the cane medically necessary. . . . Plaintiff was required to establish both need and the specific circumstance in which he needs the cane before the ALJ could include the usage of a cane in his RFC.") (citations omitted); Neilsen v. Comm'r of Soc. Sec., No. 2:18-cv-1168 AC, 2019 WL 4734758, at *5 (E.D. Cal. Sept. 27, 2019) (order to "use cane" by treating physician "falls short of the standard set forth in SSR 96-9p as it does not provide the circumstances for which the cane is needed").

Plaintiff cites no case supporting his argument that the record contains the "documented evidence describing . . . . the circumstances for which the device is needed." Reply at 5. Rather, Plaintiff argues the three Ninth Circuit decisions cited by the SSA, two of which are unpublished, are distinguishable. Id. at 5-7. First, Plaintiff argues that Jones v. Berryhill, 720 F. App'x 851 (9th Cir. 2017) is distinguishable because "the ALJ in Jones properly discounted Jones' testimony because Jones exaggerated her symptoms and their effects, failed to seek and comply with medical treatment, experienced relief of her symptoms when following treatment, and was recommended an assistive device for exercise." Reply at 5-6. In Jones, however, the court also found that "[t]he ALJ also reasonably concluded that despite Jones' testimony that she uses a walker, she was not prescribed one, as the medical record indicates her physical therapist recommended she use a walker for exercises as part of her treatment plan, rather than as a device to assist with mobility." 720 F. App'x 851 at *852. Here, Plaintiff was also not prescribed a cane. Moreover, his physical therapist did not expressly recommend that Plaintiff use a cane.

Second, Plaintiff argues Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002) is distinguishable because "the ALJ in Thomas properly discounted Thomas' testimony because of his 'extremely poor' work history, his completion of activities of daily living, conflicting testimony regarding drug and alcohol use, and failure by Thomas to put forth effort during two physical capacity evaluations." Reply at 6. The court also found,

however, that "conclusory statements" that the claimant needed a cane did not constitute "objective medical evidence of a required assistive device." Thomas, 278 F.3d at 959. The court stated, "[w]ithout objective medical evidence that Ms. Thomas needed a cane or wheelchair, and in light of the ALJ's findings with respect to Ms. Thomas' lack of credibility, there was no reason to include Ms. Thomas' subjective use of those devices in the hypothetical to the [vocational expert]." Id. Here, however, the ALJ relied on medical evidence that Plaintiff did not need a cane, and although Plaintiff cites medical evidence supporting the need for a cane, he cites no document in which a physician stated that Plaintiff needed a cane or described the specific circumstances when it was needed.

Third, Plaintiff argues Quesada v. Colvin, 525 F. App'x 627 (9th Cir. 2013) is distinguishable because "the ALJ in Quesada properly discounted Quesada's testimony because Quesada used a cane and walker intermittently and use of both devices was inconsistent with his normal gait, good mobility, lack of neurological defects, normal muscle strength, and activities of daily living – which were inconsistent with his complaints of disabling symptoms." Reply at 7. However, the court also found that "[a]lthough Quesada stated that he used a cane and walker at times, neither item was medically prescribed, and there was evidence that Quesada's use of a cane and walker was inconsistent with his normal gait, good mobility, lack of neurological defects, and normal muscle strength." Quesada, 525 F. App'x at 629. The court stated "[t]he ALJ also properly found that Quesada's daily activities, including driving, grocery shopping, cooking, and helping his children with their homework, were not consistent with his complaints of disabling symptoms and limitations." Id. Here, again, there is also no prescription for a cane, and the ALJ found Plaintiff's use of the cane was inconsistent with other evidence, including his activities of daily living. Accordingly, while there are some factual distinctions, the three cases cited by the SSA provide at least some minimally persuasive support for the ALJ's decision.

Certainly, as Plaintiff points out in detail, the record contains evidence supporting Plaintiff's need to use a cane. However, the arguments in Plaintiff's Motion, and most of

the arguments in Plaintiff's Reply, do not address whether Plaintiff met the standard in SSR 96-9p. For example, Plaintiff argues the ALJ "completely ignored evidence showing that Plaintiff requires the use of a disability placard, which supports Plaintiff's claim that his ability to walk is severely limited."[6] Pl. Mot. at 16. Plaintiff does not argue, however, that the placard itself, or any of the documentation supporting the application for the placard, constitutes "medical documentation establishing the need" for the cane, or documentation "describ[ing] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9b.

Plaintiff also takes issue with the ALJ's reliance on the statements by the consultative examiner.[7] Def. Mot. at 14. Again, however, this argument does not address the standard set forth in SSR 96-9p or show that it was met. Moreover, the ALJ did not rely solely on the October 2017 consultative exam in reaching his decision regarding Plaintiff's need for a cane. The ALJ also relied on Plaintiff's activities of daily living, "examinations around the alleged onset date," and x-rays. See AR 22, 24. Plaintiff does not argue it was error for the ALJ to have relied on Plaintiff's x-rays.

Overall, it does not appear as if, and Plaintiff does not argue, that evidence of use of a cane, combined with testimony and some medical evidence supporting the need to use a cane, obligates the ALJ to discuss in detail all the evidence in the record weighing in favor

---

[6] Plaintiff points to his August 2014 email to his primary care provider thanking him for the placard and noting that it "saved me several times when I could barely walk." Pl. Mot. at 16 (citing AR 672).

[7] Plaintiff argues (1) "[a]s to clinical examinations reviewed, the ALJ cited only a single consultative exam in October 2017 where Plaintiff was observed by his examiner to rise from a seated position without difficulty and able to ambulate without the use of his cane – despite presenting to his examination with a cane," and (2) "the consultative examiner observed how in his examination and diagnosis, there were no records for him to consider and review." Def. Mot. at 14 (citing AR 496, 500).

and against the need for a cane without regard to the standard set forth in SSR 96-9b. See Greer v. Comm'r of Soc. Sec., No. SA CV 17-01316-DFM, 2018 WL 5885942, at *4 (C.D. Cal. Nov. 7, 2018) (faulting the plaintiff for failing to "show that within the Ninth Circuit, evidence of a claimant's assistive device triggers a framework requiring the ALJ to make a finding concerning the device's medical necessity"). Regardless, none of the evidence cited by Plaintiff meets the SSR 96-9b standard, and the evidence cited by the ALJ shows it was rational for him to decline to include Plaintiff's use of a cane in the ALJ's RFC assessment. Furthermore, to the extent the ALJ was required, as Plaintiff argues,[8] to give specific, clear, and convincing reasons for discounting Plaintiff's testimony concerning his need for a cane, the ALJ's reliance on the consultative examination, Plaintiff's activities of daily living, "examinations around the alleged onset date," and other medical records including x-rays, are sufficiently specific, clear, and convincing reasons for doing so. See Dean N., , 2020 WL 430962, at *2 ("A claimant's own testimony does not constitute required medical documentation establishing the need for an assistive device."); Chaney v. Berryhill, Case No. 1:18-cv-00171-SKO, 2019 WL 1643240, at *14 (E.D. Cal. Apr. 16, 2019) (finding a lack of objective medical evidence was a clear and convincing reason to discredit plaintiff's testimony regarding his need for a cane where the ALJ noted, and the record reflected, there was no physician prescribed long-term use of an assistive device for ambulation or balance). Accordingly, the ALJ's decision is supported by substantial evidence.

///

///

---

[8] Plaintiff argues (1) "[i]t is unclear how Plaintiff's diagnostic imaging, one consultative examination, or Plaintiff's activities of daily living discredit Plaintiff's testimony concerning his symptoms," and (2) "[t]he ALJ failed to explain why one physical examination should be weighed more heavily than the other medical examinations in the record, or how Plaintiff's ability to live alone, dress, bathe, prepare meals, check emails, or pay bills refute Plaintiff's testimony regarding his ability to ambulate." Pl. Mot. at 22.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment [ECF No. 21] is **DENIED**. Defendant's Cross Motion for Summary Judgment [ECF No. 22] is **GRANTED**. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED**.

Dated:  November 18, 2021

Honorable Linda Lopez
United States Magistrate Judge